[Cite as *Hardmon v. CCC Van Wert Credit Union*, 2009-Ohio-6721.]


# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# VAN WERT COUNTY


JOHN HARDMON,                                          CASE NO. 15-09-07

   PLAINTIFF-APPELLANT,

 v.

CCC VAN WERT CREDIT UNION,                    O P I N I O N

   DEFENDANT-APPELLEE.


Appeal from Van Wert County Common Pleas Court
Trial Court No. CV 07-06-239

Judgment Affirmed

Date of Decision:  December 21, 2009


APPEARANCES:

   *Scott R. Gordon* for Appellant

   *John E. Hatcher* for Appellee

**SHAW, J.**

{¶1} Plaintiff-Appellant John Hardmon ("Hardmon") appeals from the March 24, 2009 Judgment Entry of the Court of Common Pleas of Van Wert County, Ohio, granting the Civ.R. 60(B) motion for relief of Defendant-Appellee CCC Van Wert Credit Union ("CCC") and setting aside a summary judgment in his favor. In addition, Hardmon also appeals the April 10, 2009 final Judgment Entry awarding the jury verdict of $3,000 for conversion, and acknowledging the *sua sponte* dismissal of his claim for intentional infliction of emotional distress.

{¶2} The facts relevant to this appeal are as follows. From August 27, 1973 to August 1, 2004, Hardmon worked as an employee for Sonoco Fibre and Drum. His employment with Sonoco entitled him to membership of CCC, an employee-owned credit union limited to Sonoco employees and their spouses. As a member, Hardmon applied for and received three loans from CCC. On August 7, 2001, Hardmon carried a $2,056.57 balance on the first loan and applied for a second loan. On August 9, 2001, CCC approved Hardmon for the second loan in the amount of $7,347.11. Under its terms, this loan financed Hardmon's purchase of a 1991 Cadillac Deville for $4,812 and gave CCC a security interest in the vehicle. CCC applied $487.04 to the purchase of credit disability insurance for Hardmon on that loan and used the remainder of the loan proceeds to satisfy the $2,056.57 balance remaining on Hardmon's first loan. On December 31, 2003,

CCC approved Hardmon for a third loan in the amount of $5,100.46 and used the Cadillac as collateral. The parties applied the proceeds of the third loan to pay the balance of $4,536.33 remaining on the second loan, thereby consolidating the two loans. CCC used the remaining loan proceeds to release the Cadillac from Van Wert Police custody which resulted from a municipal matter involving Hardmon unrelated to the instant case. The parties also agreed CCC would arrange for the purchase of credit disability insurance on this loan.[1]

{¶3} In the spring of 2004, Hardmon's physician determined him to be disabled due to congestive heart and lung failure. As a result, Hardmon began utilizing the credit disability insurance he purchased under the loan with CCC. The disability insurance continued to make the loan payments until August of 2006 when the policy expired. At that time, CCC claimed Hardmon owed a balance of $282.07 and sought repayment. Hardmon disputed owing any further amount, claiming the disability insurance paid the entire balance. In the following months, the parties attempted to resolve the issue. CCC sent letters to Hardmon notifying him about possible repossession of the Cadillac if the balance remained outstanding. Hardmon, in turn, made two payments of twenty dollars to prevent repossession. By April of 2007, however, all negotiations in attempt of resolution

---

[1] It should be noted that through an apparent accounting error, the cost of the insurance was not factored into the initial loan amount and as a result was later added as a separate itemized amount to the balance of the third loan. Through the course of the trial, it was revealed that this mistake created the accounting discrepancy which was the underlying reason of the parties dispute and resulted in the jury awarding Hardmon damages for conversion.

failed. On April 19, 2007, CCC repossessed the Cadillac without any breach of the peace.

{¶4} On June 14, 2007, Hardmon filed a single count complaint alleging conversion. As the basis for his complaint, Hardmon asserted he owned the car outright because the disability insurance satisfied the loan in full and as a result CCC wrongfully repossessed the vehicle. CCC timely filed its answer maintaining that the outstanding balance on loan entitled it to repossess the vehicle. On January 9, 2008, Hardmon filed a motion for summary judgment. With regard to the measure of damages, Hardmon claimed CCC's alleged conversion of the Cadillac entitled him to the return of the vehicle and damages for the inability to use the vehicle for eight months. In addition to this indefinite amount of damages, the only specific dollar amount alleged in his motion was $2,500 which represented reasonable attorney fees.

{¶5} On January 10, 2008, the trial court notified the parties that the motion would be decided without oral argument on January 31, 2008 or sometime thereafter. CCC failed to file a response to Hardmon's motion for summary judgment causing the court to grant the motion on February 6, 2008. Despite the fact that the only evidence in the record supported a specified damage amount of $2,500 for attorney fees, the summary judgment awarded Hardmon "a lump sum of" $100,000 for the conversion of the vehicle and "such further relief as this

Court deemed just and proper." The Judgment Entry offered no further evidence of damages to substantiate the summary judgment amount.

{¶6} The next day, on February 7, 2008, CCC filed a Motion for Relief from Judgment pursuant to Civ.R. 60(B)(1). As grounds for relief, CCC stated that through inadvertence it failed to file a response to Hardmon's motion for summary judgment. On March 24, 2008, the trial court granted CCC's Civ.R. 60(B) motion finding it to be in the "best interest of justice" to set aside the summary judgment. Subsequently, CCC filed a motion in opposition to Hardmon's motion for summary judgment. The trial court ultimately denied summary judgment finding the existence of genuine issues of material fact in dispute.

{¶7} As the case then proceeded to trial, Hardmon twice amended his complaint by first supplementing it with an additional count alleging punitive damages and then by adding a count alleging intentional infliction of emotional distress. On April 9 and 10, 2009, the case was heard at a jury trial. Both sides presented the testimony of several witnesses. At the close of the CCC's case, the trial court, *sua sponte*, entered a directed verdict dismissing Hardmon's claims for intentional infliction of emotional distress and punitive damages finding that the testimony introduced did not support either claim. Therefore, only the conversion claim went to the jury who ultimately determined CCC liable and awarded Hardmon $3,000, the testified value of the car.

{¶8} Hardmon filed this appeal, asserting two assignments of error.

**ASSIGNMENT OF ERROR NO. 1**
**THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE'S CIV.R. 60(B)(1) MOTION FOR RELIEF FROM JUDGMENT.**

**ASSIGNMENT OF ERROR NO. 2**
**THE TRIAL COURT ERRED AS A MATTER OF LAW BY ISSUING A DIRECTED VERDICT CONCERNING THE PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

*The first assignment of error*

{¶9} In his first assignment of error, Hardmon, argues that the trial court abused its discretion by granting CCC's Motion for Relief from Judgment pursuant to Civ.R. 60(B)(1). Specifically, Hardmon asserts that CCC did not establish "excusable neglect" in failing to file a response to his motion for summary judgment and therefore CCC did not warrant relief from judgment under Civ.R. 60(B).

{¶10} The decision to grant or deny a motion for relief from judgment pursuant to Civ.R. 60(B) lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 174, 637 N.E.2d 914. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a

reviewing court may not simply substitute its judgment for that of the trial court.

*Id.*

{¶11} Civ.R. 60(B) specifically sets forth the grounds for relief from judgment and provides as follows:

> **On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.**

In order to prevail on a motion brought pursuant to Civ.R. 60(B), "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113 at paragraph two of the syllabus. All three elements must be

established. If any one of these requirements is not met, the test is not satisfied. *ABN AMRO Mtge. Group, Inc. v. Jackson* (2005), 159 Ohio App.3d 551, 556, 824 N.E.2d 600.

{¶12} The parties do not dispute that CCC satisfied the first and third prong. CCC timely filed its motion and asserted a meritorious defense to the judgment. The point in contention is whether CCC was entitled to relief from judgment pursuant to Civ.R. 60(B)(1) on the grounds of excusable neglect.

{¶13} The Supreme Court of Ohio noted that "the term 'excusable neglect' is an elusive concept which has been difficult to define and apply." *Kay v. Marc Glassman, Inc.,* 76 Ohio St.3d 18, 20, 1996-Ohio-430, 665 N.E.2d 1102. Because the determination of what constitutes excusable neglect in a given case is intensely fact specific, the inquiry must necessarily take into account all the surrounding facts and circumstances. *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, 416 N.E.2d 605. In the instant case, CCC had clearly appeared in the action and had demonstrated a good faith intent to defend itself. For seven months CCC attended every pretrial conference and actively participated in the discovery process. CCC conceded that it failed through inadvertence to file a response to Hardmon's motion for summary judgment.

{¶14} However, it is evident to this Court that there existed an additional circumstance which clearly warranted the trial court to grant a Civ.R. 60(B) motion for relief—in that the summary judgment itself was in fact flawed.

{¶15} At the time Hardmon filed his motion for summary judgment he alleged a single cause of action, conversion. It was only after the trial court granted CCC's motion for relief that Hardmon twice amended his complaint to add the counts of punitive damages and intentional infliction of emotional distress. As a result, at the time summary judgment was granted, neither Hardmon's motion nor his affidavit accompanying his motion for summary judgment alleged any specific amount of damages as to the conversion claim. Nevertheless in granting summary judgment, the trial court awarded Hardmon "a lump sum of $100,000"— a damage amount completely unsubstantiated by the evidence before the court at that time. Although the trial court might have granted partial summary judgment as a matter of law as to liability on the substantive claim of conversion, the amount of damages at best remained a controverted issue of fact that precluded comprehensive summary judgment.

{¶16} Because the trial court awarded Hardmon an arbitrary amount of damages not supported by any competent, credible evidence in the record, the summary judgment entered by the trial court was on its face clearly improper and as such the Civ.R. 60(B) determination subsequently entered by the trial court was warranted in the best interests of justice without regard to the claim of excusable neglect.

{¶17} Additionally, we note that Civ.R. 60(B)(1) is a remedial rule to be liberally construed. When a movant has filed a timely motion for relief and has

asserted a meritorious defense, any remaining doubt should be resolved in favor of the motion to set aside the judgment so that the case may be decided on the merits. *Colley*, 64 Ohio St.2d at 248 citing *GTE*, 47 Ohio St.2d at 151.

{¶18} In sum, the trial court had the opportunity to review all the facts and the unique circumstances as to damages set forth above surrounding the merits of CCC's assertion of excusable neglect and found CCC's motion for relief "well taken" and "in the best interest of justice." (Entry, March 25, 2008). In light of these unique facts and circumstances, we conclude that the granting of CCC's Civ.R. 60(B) motion for relief was reasonable and thus cannot find that the trial court abused its discretion.

{¶19} Therefore, Hardmon's first assignment of error is overruled.

*The Second Assignment of Error*

{¶20} In his second assignment of error, Hardmon asserts that the trial court erred at the subsequent trial when it issued a directed verdict, *sua sponte*, dismissing Hardmon's claims for intentional infliction of emotional distress.

{¶21} Initially, we note that a trial court has the authority to *sua sponte* enter a directed verdict. *Graham v. Cedar Point, Inc.* (1997), 124 Ohio App.3d 730, 733, 707 N.E.2d 554.

{¶22} Directed verdicts are governed by Civ.R. 50(A)(4) which states:

> **When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.**

A motion for directed verdict tests whether the evidence offered at trial is sufficient to warrant a jury's consideration. The inquiry presents "a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." *O'Day v. Webb* (1972), 29 Ohio St.2d 215, at paragraph three of the syllabus, 280 N.E.2d 896. Accordingly, the appellate court's standard of review is de novo. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478.

{¶23} A claim for intentional infliction of emotional distress lies where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union* 20 (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, at syllabus (overruled on other grounds). "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286. Additionally, the mental anguish suffered by the plaintiff must be so severe and

debilitating that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 451 N.E.2d 759. "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.*

{¶24} At trial, Hardmon presented a licensed social worker, Todd Trippett, as the only witness to testify to the existence of his severe emotional distress. Trippett testified that Hardmon began therapy sessions with him in August of 2008—over a year after the repossession of his vehicle and the commencement of these legal proceedings—and that he continued to see Hardmon at the time of the trial in April of 2009. Trippett also testified that a psychiatrist diagnosed Hardmon with dysthimia, a type of chronic depression. As to the proximate cause of Hardmon's depression, Trippett testified that *Hardmon* claimed the repossession of the car and the ongoing litigation triggered his emotional state. Notably, however, he also testified that "if that was the stressor that created [the depression], I can't speak to that issue." (Trial Trans. p. 48, line 48). Throughout the testimony, Trippett distinguished Hardmon's assessment of his depression from his own and never testified to the direct causal connection between CCC's conduct and Hardmon's emotional distress.

{¶25} We must also assess the evidence demonstrating that CCC's conduct rose to the level of extreme and outrageous. At the time CCC repossessed the

vehicle it believed that an outstanding balance remained on the loan. There was testimony as well as exhibits entered into evidence showing that CCC informed Hardmon the car would be repossessed if he did not pay on the loan. Despite his protests that the disability insurance paid the loan, Hardmon made two additional payments on the loan further confusing the issue. At the time of the repossession, Hardmon testified he was asleep. He also testified that he did not discover the car was missing until later that evening when a friend of his girlfriend noticed the car absent from the driveway. Moreover, Hardmon testified that the CCC employees talked "peacefully" to him and never raised their voices. He also testified that prior to the repossession the CCC employees made attempts "to work things out" with him.

{¶26} Construing the evidence in the record most strongly in favor of Hardmon, there is evidence that Hardmon suffered from chronic depression. The record, however, fails to show that Hardmon offered sufficient evidence to satisfy the remaining two elements. CCC's conduct did not rise to the level of extreme and outrageous. However, assuming arguendo that the evidence supported a prima facie showing of that element, Hardmon failed to establish that CCC's conduct was the proximate cause of his emotional distress. Because Hardmon did not present sufficient evidence to support a claim of intentional infliction of emotional distress, the directed verdict was proper and his second assignment of error is therefore overruled.

**{¶27}** Based on the foregoing, the March 24, 2009 Judgment Entry granting the Civ.R. 60(B) motion for relief setting aside a summary judgment and the April 10, 2009 final Judgment Entry the Court of Common Pleas of Van Wert County, Ohio are therefore affirmed.

*Judgment Affirmed*

**PRESTON, P.J., and WILLAMOWSKI, J., concur.**

**/jnc**