[Cite as *Gentile v. Turkoly*, 2017-Ohio-1018.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RICHARD D. GENTILE, M.D., | ) | CASE NO. 16 MA 0071 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KELLY TURKOLY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common
                                 Pleas of Mahoning County, Ohio
                                 Case No. 2015 CV 606

JUDGMENT:                        Affirmed.

APPEARANCES:

For Plaintiff-Appellant:         Atty. Christopher P. Lacich
                                 Roth, Blair, Roberts, Strasfeld & Lodge
                                 100 East Federal Street
                                 Suite 600
                                 Youngstown, Ohio 44503

For Defendant-Appellee:          Atty. Christopher J. Regan
                                 Atty. J. Zachary Zatezalo
                                 Bordas and Bordas, LLC
                                 1358 National Road
                                 Wheeling, West Virginia 26003

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  March 20, 2017

ROBB, P.J.

{¶1}   Plaintiff-Appellant Richard D. Gentile, M.D., appeals the decision of Mahoning County Common Pleas Court granting a directed verdict for Defendant-Appellee Kelly Turkoly.   Two arguments are presented in this appeal.   The first is whether the trial court is permitted to direct a verdict sua sponte.   The second is whether the trial court erred and/or abused its discretion in granting the directed verdict.   For the reasons expressed below, the trial court's decision is affirmed.   Trial courts have inherent authority to sua sponte direct verdicts.   The trial court did not err when it granted a directed verdict in Appellee's favor.

Statement of the Case

{¶2}   In 2010, Appellee hired Appellant to perform facial plastic surgery.   In 2011, Appellee sued Appellant for medical malpractice and medical battery.   The case proceeded to a jury trial, and the jury returned a verdict in Appellee's favor.   The jury found Appellant failed to obtain Appellee's informed consent and committed a medical battery; however, the jury found Appellant did not act with actual malice.   The jury awarded damages in the amount of $5,100,000.   That verdict, however, was reduced to $600,000, which was satisfied in September 2013. Tr. 401-402.   Appellee appealed the verdict, but later voluntarily dismissed the appeal. 8/27/14 Notice of Appeal 13MA135; 9/24/13 Voluntary Dismissal J.E.

{¶3}   In early September 2013, Appellee posted a review of Appellant on vitals.com. Plaintiff's Exhibit 1.   The review stated, among other things, Appellant was not "Board Certified as a PLASTIC SURGEON" and warned others to "stay away from this Unscrupulous Dr."  Plaintiff's Exhibit 1.

{¶4}   In late 2014, after doing some research, Victoria Oliver Dos Santos contacted Appellant about having a procedure on her thighs.   Tr. 249.   After the consultation she paid for the surgery, but continued to research Appellant.   This additional research led her to cancel her surgery and ask for a refund.

{¶5}   According to Dos Santos the additional research unearthed some negative reviews and newspaper articles about the aforementioned medical malpractice lawsuit. Tr. 256-257.   When she called to cancel the surgery, she referenced negative reviews and the malpractice verdict.

{¶6} Appellant's receptionist, Tammy Steele, received the call from Dos Santos. Tr. 320. Steele testified Dos Santos told her she wanted to cancel the surgery based on remarks she had seen on vitals.com and having read Appellant was not board certified. Tr. 321, 327. Steele avowed she followed office procedures; she accurately and immediately wrote the message down and forwarded the message to the Office Manager Rose Weese. Tr. 324; Plaintiff's Exhibit 2.

{¶7} Weese testified upon receiving the message, she went directly to Appellant. Tr. 350. Both Weese and Appellant were surprised by the note, and Appellant directed Weese to suggest a couple of other, more legitimate, websites. Tr. 351. Allegedly vitals.com is not as accurate as other review websites because the patient/reviewer on vitals.com is not required to register. Tr. 351. Weese then composed an email to Dos Santos indicating why vitals.com was unreliable and suggested other websites to investigate. Tr. 352, Plaintiff's Exhibit 3. The email also addressed Appellant's board certifications. Plaintiff's Exhibit 3. Weese indicated Dos Santos could confirm that Appellant is a certified facial plastic surgeon by looking on the American Board of Facial Plastic and Reconstructive Surgery website. Plaintiff's Exhibit 3.

{¶8} Dos Santos testified when she called to cancel the appointment she did not state she read reviews on vitals.com, and she did not state she read that Appellant was not certified. Tr. 264, 266, 269, 271. She testified she had never been on the vitals.com review site. Tr. 251, 304. She averred she never read he was not board certified; her testimony indicated she was confused by that statement because she always believed he was board certified. Tr. 271-272, 302-303. Dos Santos was given Appellee's review to read; after reading it she avowed she never saw the review. Tr. 275. She testified if she had seen it she would have remembered it because it referenced MRSA and her grandfather died from MRSA. Tr. 276-277. She further testified she does not know Appellee and has never corresponded with Appellee. Tr. 278, 297. All she knew was what she read about the lawsuit in the newspaper article. Tr. 278.

{¶9} Dos Santos responded to Weese's email. Tr. 305-307; Defendant's Exhibit A. She once again cancelled the surgery and requested a refund. The email

stated that she could not forget "the extremely negative reviews and the lawsuit for $5.1 million." Defendant's Exhibit A; Tr. 306-307.

{¶10} Dos Santos surgery was cancelled and she received a refund.

{¶11} As a result of her cancellation and Appellee's vitals.com review, Appellant sued Appellee for tortious interference with business relations and tortious interference with a contract. Appellant sought monetary and injunctive relief. 3/4/15 Verified Complaint. Appellant asserted two of the statements in the vitals.com review were actionable – the statement about him not being board certified and the statement he was unscrupulous. Appellee answered the complaint and following discovery filed a motion for summary judgment. 6/1/15 Answer; 12/17/15 Summary Judgment Motion. In the motion for summary judgment, Appellee asserted the statement about Appellant not being a board certified plastic surgeon was true and calling him unscrupulous was an opinion. Appellant filed a response. 1/28/16 Response to Motion for Summary Judgment. Appellant filed a reply. 2/5/16 Reply. The motion for summary judgment was denied.

{¶12} A jury trial began on March 23, 2016. After Appellant's case-in-chief, the trial court directed the parties to "argue the motion for directed verdict." Tr. 453. Neither party objected to this order. After lengthy discussions, the trial court directed a verdict in Appellee's favor. Tr. 476. Although the trial court found there was sufficient evidence of the existence of a contract between Appellant and Dos Santos, the trial court found there was insufficient evidence on the Appellee's knowledge of this contract and any other business relationship, and insufficient evidence there was tortious interference causing a party to breach the business relationship. 3/31/16 J.E. The court stated Appellee had the right to write her opinion on Appellant and as to board certification, there was no sufficient evidence indicating her statement was untrue. Tr. 478.

{¶13} Appellant timely appealed the decision raising six assignments of error. The first two assignments of error address the trial court's decision to sua sponte grant a directed verdict. The third through six assignments of error address the merits of the directed verdict ruling, i.e., whether Appellant presented sufficient evidence for the cause of action to go to the jury.

<u>First and Second Assignments of Error</u>

"The trial court erred by sua sponte granting directed verdict in favor of Defendant-Appellee and not upon motion of a party, contrary to Civil Rule 50(A)(1) and/or (A)(3) and/or (A)(4)."

"The trial court abused its discretion by sua sponte granting directed verdict in favor of Defendant-Appellee and not upon motion of a party, contrary to Civil Rule 50(A)(1) and/or (A)(3) and/or (A)(4)."

{¶14} The first and second assignments of error procedurally attack the trial court's decision to sua sponte direct a verdict in Appellee's favor. Appellant is of the position the language of Civ.R. 50(A) does not permit a trial court to sua sponte grant a directed verdict. Rather, a directed verdict can only be granted if a party has moved for a directed verdict.

{¶15} Appellee disagrees and argues this court and numerous other Ohio Appellate Courts have held a trial court has inherent authority to sua sponte direct a verdict.

{¶16} The rule for a motion for directed verdict states:

**(A) Motion for directed verdict**

*(1) When made.* A motion for a directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence.

*(2) When not granted.* A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.

*(3) Grounds.* A motion for a directed verdict shall state the specific grounds therefor.

*(4) When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

*(5) Jury assent unnecessary.* The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

Civ.R. 50(A).

**{¶17}** Appellant contends the language of this rule clearly indicates a party must move for a directed verdict before a trial court is permitted to grant the motion. Or in other words, trial courts have no authority to sua sponte direct a verdict.

**{¶18}** Our district and our sister districts disagree with that argument. In 2002, we reviewed a trial court's decision to sua sponte grant a directed verdict. *City of Steubenville v. Schmidt*, 7th Dist. No. 01 JE 13, 2002-Ohio-6894, ¶ 31. We held the trial court has authority to sua sponte direct a verdict and supported that conclusion by citing to the Sixth Appellate District. *Id.*, citing *Graham v. Cedar Point, Inc.*, 124 Ohio App.3d 730, 707 N.E.2d 554 (6th Dist.1997). In addition to the Sixth District, many of our other sister districts have reached the same conclusion. *Frazier v. Rodgers Builders*, 8th Dist. No. 91987, 2010-Ohio-3058, ¶ 69 (inherent authority to direct a verdict); *Hardmon v. CCC Van Wert Credit Union*, 3d Dist. No. 15-09-07, 2009-Ohio-6721, ¶ 21 (same); *Mynes v. Brooks*, 4th Dist. No. 08CA3211, 2009-Ohio-5017, ¶ 52 (same); *Ray v. Plaza Mini Storage, Inc.*, 9th Dist. No. 00CA007734, 2001 WL 542320 (inherent authority to sua sponte grant a directed verdict on any ground that is appropriate); *Miller v. Miller & Miller Accountants, Inc.*, 5th Dist. No.99CA18-2, 2000 WL 329814 (Mar. 6, 2000) ("While Civ.R. 50(A) is silent as to the power of the court to grant a directed verdict sua sponte, several courts of appeals have held if a court determines reasonable minds could come to but one conclusion, on the evidence submitted, the court should be able to remove [that] issue from the jury

upon its own motion."); *English v. Halishak*, 11th Dist. No. 1136, 1984 WL 6432 (inherent authority to direct a verdict).

**{¶19}** Given the case law, we maintain our position; a trial court can sua sponte direct a verdict, if that decision is supported by the record. Factual distinctions between cases have not deterred appellate courts from consistently holding a trial court has inherent authority to sua sponte direct a verdict. The first and second assignments of error are meritless.

<u>Third, Fourth, Fifth and Sixth Assignments of Error</u>

"The trial court erred as a matter of law by determining at the conclusion of the Plaintiff's case-in-chief that even looking at the evidence in plaintiff's favor, said evidence was not sufficient evidence on one or more essential elements of Plaintiff's claim, contrary to Civil Rule 50(A)(4)."

"The trial court abused its discretion by determining at the conclusion of the Plaintiff's case-in-chief that even looking at the evidence in plaintiff's favor, said evidence was not sufficient evidence on one or more essential elements of Plaintiff's claim, contrary to Civil Rule 50(A)(4)."

"The trial court erred as a matter of law by determining at the conclusion of the Plaintiff's case-in-chief that even looking at the evidence in plaintiff's favor, reasonable minds could come to but one conclusion adverse to plaintiff, contrary to Civil Rule 50(A)(4)."

"The trial court abused its discretion by determining at the conclusion of the Plaintiff's case-in-chief that even looking at the evidence in plaintiff's favor, reasonable minds could come to but one conclusion adverse to plaintiff, contrary to Civil Rule 50(A)(4)."

**{¶20}** A trial court's decision granting a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Carter v. R & B Pizza Co., Inc.*, 7th Dist. No. 09JE34, 2010-Ohio-5937, 2010 WL 4926742, ¶ 15. The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4):

> *When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is

directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Civ.R. 50.

**{¶21}** A motion for directed verdict tests the sufficiency of the evidence at trial, not the weight of such evidence or the credibility of witnesses. *Sayavich v. Creatore*, 7th Dist. No. 07-MA-217, 2009-Ohio-5270, ¶ 44. "[T]he court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" *One Step Further Physical Therapy, Inc. v. CTW Dev. Corp.*, 7th Dist. No. 11 MA 66, 2012-Ohio-6137, ¶ 35.

**{¶22}** The claims raised to the trial court were tortious interference with a contract and tortious interference with a business relationship.

**{¶23}** Tortious interference with a contract occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person * * * not to perform a contract with another." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). The elements of the tort are: 1) the existence of a contract, 2) the defendant's knowledge of a contract, 3) the defendant's intentional procurement of the contract's breach, 4) the lack of justification, and 5) the resulting damages from that breach. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), paragraph 1 of the syllabus. In order to prevail, a party must demonstrate that the wrongdoer intentionally and improperly interfered with its contractual relations with another. *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App.3d 394, 400, 734 N.E.2d 409 (1st Dist.1999).

**{¶24}** Tortious interference with a business relationship is similar to tortious interference with a contract. "The tort of interference with a business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another." *DK Prods., Inc. v. Miller*, 12th Dist. No. CA2008–05–060, 2009–Ohio–436, ¶ 9, citing *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Dist. Co.*, 148 Ohio

App.3d 596, 774 N.E.2d 775, 2002–Ohio–3932, ¶ 23 (3rd Dist.). The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *First-Knox Natl. Bank v. MSD Properties, Ltd.,* 2015-Ohio-4574, 47 N.E.3d 490, ¶ 19 (5th Dist.). Tortious interference with a business relationship does not require the breach of contract, rather it is sufficient to prove that a third party does not enter into or continue a business relationship with the plaintiff. *See Magnum Steel & Trading, LLC v. Mink*, 9th Dist. Nos. 26127 and 26231, 2013-Ohio-2431, ¶ 10.

**{¶25}** Both causes of action require proof of actual malice to defeat a claim of qualified privilege. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). Thus, Appellant was required to prove Appellee "knew [the statements] were false or acted with reckless disregard of whether they were true or false." *Id.* at 15. Merely communicating a good faith opinion to another person does not rise to the level of tortious interference. *Altier v. Valentic*, 11th Dist. No. 2003-G-2521, 2004-Ohio-5641, ¶ 18. The Ohio Supreme Court has recognized that expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281, 649 N.E.2d 182 (1995), citing *Scott v. News–Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986). In determining whether speech is a protected opinion, a court must consider the totality of the circumstances. *Vail* at syllabus. The court must consider "the specific language at issue, whether the statement is verifiable must be considered, the general context of the statement, and the broader context in which the statement appeared." *Id.*

**{¶26}** In this case, the trial court found the evidence was sufficient to show Appellant had a contract with Dos Santos. The court, however, found there was insufficient evidence to show Appellee knew of that contract, and there was insufficient evidence she knew of any other business relationship between any other person. The trial court found there was insufficient evidence of any actual malice on

the part of Appellee. It also found Appellant offered insufficient evidence on the issue of damages. 3/31/16 J.E.

**{¶27}** Further reasoning for the decision to direct the verdict was stated at the trial:

> If I then go on and follow your argument to the business relationship, there's no evidence in front of me, there's not one piece of evidence, other than a belief by the doctor, that this one posting affected his business relationship.

> I have comments made by nameless people and nameless localities. I have nothing in front of me to show any loss of business. I have no other individuals that have come in. There's nothing in front of me to show that this was at all an interference with a business relationship. That she had to, with purpose and intent to procure the contract's breach. Well, if I find that she didn't know about the contract, she can't do that. There's no proof that there was any interference with business relations. There's no evidence that she did it with that purpose. She has a right to write her opinions, and if the effect of that opinion is that other people don't go there, then there should be a cause of action for everybody who goes online and writes an opinion that's negative about a doctor or lawyer or anybody. And that's not what the law is.

> And while there is some great disagreement as to board certification, it is not sufficient enough for me to find that it's untrue. Unscrupulous may have been a bad word, but there's worse words than unscrupulous. She has a right to give her opinion. There's no evidence as to the D. And I don't find – because I don't find any injury. The only testimony in front of me is he spent money on attorney fees. And there's nothing to show a loss of income, there's nothing to show any of that. So there's no damages here.

Tr. 477-478.

**{¶28}** Considering the trial court's reasoning and the evidence presented, the trial court did not err in directing the verdict. As set forth below, the evidence at trial was not sufficient to create a factual issue for the jury on the elements of tortious interference with a contract and/or tortious interference with a business relationship.

**{¶29}** The first two elements are the existence of a contract or prospective business relationship and defendant's knowledge thereof. The knowledge required is actual knowledge; constructive knowledge is not sufficient to sustain a cause of action for tortious interference with contract, actual knowledge is required. *Norris v. Philander Chase Co.*, 5th Dist. No. 10-CA-04, 2010-Ohio-5297, ¶ 26, citing *Crown Equip. Corp. v. Toyota Material Handling, U.S.A., Inc.*, 202 Fed.Appx. 108, 2006 Fed.App. 0798N (C.A.6, 2006).

**{¶30}** Admittedly, the evidence undisputedly establishes there was a contract between Dos Santos and Appellant. The contract was canceled and the evidence shows Dos Santos was refunded approximately $8,000. The reason the contract was canceled is disputed. Appellant's office receptionist testified Dos Santos told her she wanted to cancel the surgery based on reviews she had seen on vitals.com and having read Appellant was not board certified. Tr. 321, 327. Dos Santos stated the reason she canceled was negative reviews from other websites and newspaper articles about the million dollar medical malpractice lawsuit. Tr. 256-257, 278. Dos Santos testified she has never been on the website vitals.com, she did not read Appellee's review prior to her testimony, and she never told the staff person at Appellant's office that she was canceling the surgery based on a review she read on vitals.com claiming Appellant was not board certified. Tr. 251, 264, 266, 269, 271, 275, 278, 304. This information creates a genuine issue of material fact as to whether Appellee's review was the cause of her canceling her surgery. However, that does not mean the directed verdict was inappropriate on the interference with a contract claim. The issue is still the element of whether she had actual knowledge of the contract. The evidence undisputedly demonstrates Dos Santos and Appellee did not know each other and Appellee did not know of the contract between Dos Santos and Appellant. Tr. 297-298.

**{¶31}** Other than the contract with Dos Santos, Appellant did not offer any testimony or evidence that the vitals.com review prevented third parties from entering into business relationships with him. Admittedly, the review was found "helpful" by six unnamed individuals. Plaintiff's Exhibit 9. Given the facts, that evidence was not sufficient to prevent a directed verdict. The "helpful" designations were made by unnamed people and merely clicking on the "helpful" icon does not evince these "users" intended to have surgery performed and this one review is the reason that user did not use Appellant to perform the surgery.

**{¶32}** Also, as to the third element for each cause of action, there was no evidence of an intentional interference causing a breach or termination of a business relationship. Appellant complains of the language in the vitals.com review and contends two of the statements made in the review are actionable. The review written by Appellee states:

> I chose Dr. Gentile because all the research I did on him before paying him to do my surgery said he was an expert plastic surgeon with years of experience on the head and neck. Little did I realize that meant he was Board Certified as an ENT., and NOT Board Certified as a PLASTIC SURGEON. There is a BIG difference in those two Certifications, but how is the common patient to know this? He mislead me in the consultation, saying I needed many more procedures than just the Upper eyelid surgery Which I consulted with him in the first place. I TRUSTED him and paid him to do the procedures he said I would need to make me look fabulous in 2 weeks! The morning of surgery, after taking sedatives that he prescribed, I showed up at the Boardman office. They were running late and I sat in the waiting room for almost 90 minutes. A nurse came out and had me sign papers telling me they were for anesthesia. Minutes later I was taken in the back, I.V. put in my arm, and seconds before I blacked out, Dr. Gentile walked in, said "Lets get started" . . . when I woke up, I was very disoriented and have very little memory for days after surgery. He never told me that he didn't do the procedures I paid him to do, and that

he did procedures I knew nothing about. I had to discover this all on my own, each day as bandages and stitiches were removed. I broke out with huge boils on my face just days after surgery. I called, begging for an appt., but was told "it's a normal healing process and they'd see me at my next appt, which was days later. I asked for an antibiotic and was told, "No". When I would show up for my appt., the Dr. avoided me, would not address my problems and then I was told that "he was in surgery" and couldn't see me. The staff always told me how I [sic] great I looked, which was a joke, because I looked like a Monster, with huge boils, bruises and a tremendous amount of swelling. Finally, I had to resort to seeing my "Family Dr." and after culturing my boils, he determined that I had MRSA. I tried making appts., so that I could talk to Dr. Gentile about my Dr.'s diagnosis, but they kept cancelling them. This went on for 2 months. I am left now with permanent scarring that I shouldn't have. Nerve Damage and MRSA infections. Stay away for this Unscrupulous Dr.

Plaintiff's Exhibit 1.

**{¶33}** Appellant contends the statement that he is not board certified and the statement he is unscrupulous are actionable. We disagree.

**{¶34}** The unscrupulous statement is the Appellee's opinion based on her factual situation with Appellant. In the prior lawsuit, Appellee was able to prove Appellant performed surgery on her without her informed consent. Her review indicates she did not give her consent for the procedures and that led her to conclude Appellant was unscrupulous. The parties agree the word unscrupulous has many definitions. When used in the manner it was used in this review, it invokes the thought that this is the writer's opinion given the facts as she laid them out. Opinions generally are not actionable. *Vail*, 72 Ohio St.3d at 281.

**{¶35}** As to board certification as a plastic surgeon, there was testimony about this issue. There is an American Board of Medical Specialties (ABMS) and it has certain boards of specialties. One board is the American Board of Otolaryngology and another one is the American Board of Plastic Surgery. Tr. 434-

435; Plaintiff's Exhibit 10. Appellant is certified by the American Board of Otolaryngology. Plaintiff's Exhibit 10; Tr. 411. The language of the certification states, "has pursued an accepted course of graduate study, clinical work and has successfully passed an examination in Otolaryngology including General Otolaryngology, Otology, Facial Plastic Surgery, Head and Neck Surgery and Pediatric Otolaryngology." Plaintiff's Exhibit 10. However, Appellant is not certified by the ABMS American Board of Plastic Surgery. Tr. 435. He testified he is certified by a non-ABMS board for facial plastic and reconstructive surgery. Tr. 435.

{¶36} Technically, Appellee's statement is correct. Appellant is not an ABMS board certified plastic surgeon. However, he is certified by the ABMS for Otolaryngology. Otolaryngology is defined as "the branch of medicine that combines treatment of the ear, nose and throat." Webster's II New Riverside University Dictionary 833 (1984). To an ordinary person this definition means an ENT. Thus, it is a fact Appellant is not certified by the ABMS American Board of Plastic Surgery. Therefore, the statement is not actionable.

{¶37} That said, we acknowledge the review does not use ABMS board certified references. Appellant's certification by the ABMS Otolaryngology specialty board, which includes facial plastic surgery, is not referenced in the review nor is Appellant's certification by a non-ABMS board for Facial Plastic and Reconstructive Surgery. However, when the review is read in its context, Appellee is correctly asserting Appellant is not an ABMS board certified plastic surgeon. Her reference to Appellant being a board certified ENT demonstrates she is aware of his board certification by the Otolaryngology specialty board and he is not certified by the ABMS Plastic Surgery specialty board.

{¶38} The conclusion her statements are true further supports the conclusion the claims are not actionable; Appellant cannot show actual malice. Appellant admits he must show actual malice, which is the statements are false or Appellee acted with reckless disregard as to whether the statements were false. The vitals.com review does not demonstrate actual malice; the review was based on her experience and opinion. It shows a knowledge of board certifications, but does not create an issue as to whether she recklessly disregarded and omitted that Appellant was a non-

ABMS certified facial plastic and reconstruction surgeon. Furthermore, Appellee's testimony on cross-examination supports the position that she was not acting with actual malice; she indicates she was not angry, but was telling her experience. Tr. 213, 216, 225.

**{¶39}** Lastly, Appellant failed to present evidence of damages, the final element of both causes of action. Appellant presented the damages from Dos Santos rescinding her contract. However, as stated above, there was no evidence Appellee had actual knowledge of that contract. Other than the cancellation of the Dos Santos contract, there was no evidence of lost revenue. In fact, there was no evidence on revenue prior to the review as compared to revenue after the review was published. Appellant's own witnesses testified the office was always busy and was busy when Dos Santos canceled her surgery.

**{¶40}** For the above stated reasons, these assignments of error lack merit. There was no evidence Appellee had actual knowledge of the contract or business relationship between Dos Santos and Appellant, or the statements in the vitals.com review were facts and opinion. There was no showing of actual malice, and no evidence of damages.

## Conclusion

**{¶41}** All assignments of error lack merit. The trial court's decision is affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.