[Cite as *Thomason v. AT&T*, 2018-Ohio-4914.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### BELMONT COUNTY

MICHAEL THOMASON,

Plaintiff-Appellant,

v.

AT&T, et al.,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 BE 0016**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CV 259

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
AFFIRMED

---

*Attys. William Hunt and Lydia Cancilla*, 24500 Center Ridge Road, Suite 170, Westlake, Ohio 44145, for Appellee and

*Atty. Michael Conway*, 3456 Sandlewood Drive, Brunswick, Ohio 44212, for Appellant.

Dated:  December 10, 2018

**BARTLETT, J.**

{¶1}   Appellant, Michael Thomason appeals the judgment entry of the Belmont County Court of Common Pleas granting summary judgment in favor of Appellee, AT&T Mobility Services LLC ("AT&T") on his abuse of process claim.  Because there is no evidence in the record that AT&T perverted the prior criminal proceeding in an attempt to accomplish an ulterior purpose for which it was not designed, the judgment of the trial court is affirmed.

I.      Standard of Review

{¶2}   An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C).  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that:  (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party.  *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).  Whether a fact is "material" depends on the substantive law of the claim being litigated.  *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶3}   "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.)  *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996).  If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial.  *Id.* at 293.  In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor.

II.    Facts and Procedural History

**{¶4}**    The relevant facts are undisputed.  However, the following disputed facts are essential to a complete understanding of Appellant's abuse of process claim. Appellant and his wife, Joann Bice, are residents of Arkansas but were on an extended stay in Ohio due to Bice's job in the oil and gas industry. (Thomason Depo. 73). Appellant visited the AT&T Store at the Ohio Valley Mall in Belmont County, Ohio three times, twice on April 13, 2014, first unaccompanied and then with Bice, and once unaccompanied on April 14, 2014.

**{¶5}**    Appellant first visited the store to determine whether that particular location stocked Bice's current mobile telephone, because she was having difficulty charging it.  Appellant testified that he asked an account representative about the availability of the particular brand and model, but the account representative would not provide any information without Appellant's photo identification.  (Thomason Depo. 121). According to Appellant, he called the account representative an "idiot" and told him that he would retrieve his drivers' license from his "f'ing truck" and "come back * * * and cancel all six of [his] accounts."  (*Id.* 124).  According to Brooke Wehr, a second account representative present during Appellant's first visit to the store, he was boisterous and "yelling profanities" in front of other customers and their children in the crowded store. (Wehr Depo. 25-30).

**{¶6}**    During Appellant's second visit to the store later that day, this time with Bice, he refused assistance from Dustin Kawa (presumably the account representative who assisted him earlier) and requested "the bald guy" (Manager Geno Martello), who had left for the day. (Griffin Aff. ¶3).  Instead, Nicholas Griffin, a third account representative, and Richard Wells, a sales support representative, assisted Bice with her mobile phone purchase.  (*Id.* ¶ 4).

**{¶7}**    In order to access a customer account, AT&T requires valid state-issued identification.  Bice attempted to use her Arkansas-issued concealed carry permit ("CCW permit").  According to Griffin, he explained to Bice that she must produce her drivers' license in order to access her account.  (*Id.* ¶ 6, Wells Depo. 67-68).  However, Appellant testified that Griffin accepted Bice's CCW permit, but that she found her drivers' license at the conclusion of the transaction when she was looking for her credit

card.  (Thomason Depo. 118).

{¶8}    According to Griffin, Bice asked whether there was a discount associated with her employer.  Griffin told her that she was eligible for a discount, but she was required to submit a pay stub in order to verify her employment.  (Griffin Aff. ¶ 7).  Bice advised Griffin that Appellant would return the following day with a pay stub, and she provided the necessary verbal authorization for Appellant to access her account.  Griffin reminded Appellant to bring his drivers' license, and Appellant said he would "make sure" that he brought it with him the following day.  (*Id.* ¶ 8).

{¶9}    On April 14, 2014, Appellant returned to the store alone with Bice's pay stub.  Appellant was the only customer in the store.  (Wehr Depo. 41.)  Wehr approached Appellant and asked him for his drivers' license in order to access Bice's account and process her discount.  However, Appellant produced his Arkansas CCW permit as his state-issued identification.  Wehr explained at her deposition that she refused to accept the CCW permit, because CCW permits are not on AT&T's written list of accepted forms of state-issued identification.  (*Id.* 34.)

{¶10} According to Appellant's testimony, he is disabled and walks with a cane, so he would have been greatly inconvenienced and in pain if he had to leave the store, which was located in the center of the mall, walk to his truck, then return to the store. (Thomason Depo. 106).  Further, Appellant asserts that Griffin had accepted Bice's CCW permit in lieu of a drivers' license the previous day.

{¶11} The extent to which Appellant expressed his anger with the situation is widely disputed.  According to Wehr, when she refused to accept his CCW permit, Appellant became argumentative, stating that he was going to use "this fucking concealed weapon permit, it is a state issued ID, da, da, da, like giving [her] the whole spiel about it."  (Wehr depo. 38-39).  According to her voluntary statement to the Sheriff's Department, "[Appellant] continued to yell and cuss at [her] and told [her] that his permit is state issued and gives him access to carry the gun he has in his pocket and take it or use it anywhere he wants or needs to."  (4/14/14 Voluntary Statement). Wehr testified that Appellant patted his pocket during his tirade, which terrified Wehr and prompted her and fellow employee Julie Hood to leave the sale floor and retreat to the back room.  (Wehr Depo. 47.)

**{¶12}** Wells, who was unloading inventory in the back room, approached Appellant and attempted to diffuse the situation, offering to walk to Appellant's car and retrieve Appellant's identification for him. (Wells Depo. 19-20). Wells had assisted Bice during Appellant's second visit on the previous day and characterized Appellant as "short tempered." (*Id.* 69).

**{¶13}** Wells testified that Appellant declined Wells' offer, but agreed to walk to his car to retrieve his drivers' license. However, Appellant stated that if he encountered any additional problems when he returned to the store, he would disconnect his phone service. (*Id.* 21). According to Wells, AT&T assistant manager Courtney Burge, who had just returned to the sales floor from the back room, told Appellant that his threats were unnecessary. Apparently referring to Kawa, Appellant began his next statement with "Because of that idiot the other day," but Burge interrupted him, telling him to leave the store and not to return. (*Id.* 21-22).

**{¶14}** According to Burge, she had learned from Wehr that Appellant purported to have a gun in his pocket. (Burge Depo. 26). Nevertheless, Burge returned to the sales floor after confirming that Appellant's CCW permit was not on AT&T's list of accepted forms of identification. (*Id.* 25). She explained to Appellant that she needed his drivers' license to access Bice's account.

**{¶15}** As he was exiting the store to retrieve his driver's license, he stated that all of the AT&T employees were "idiots." (*Id.* 28). Burge told him that he "couldn't talk to [them] like that and that he could not come back." (*Id.*) Burge also told Appellant that she would call the police if he did not leave the store. (*Id.* 30). Appellant told Burge that she was "ugly" and called her a "fat bitch." (Burge Depo. 40-41). Wells confirmed that Appellant called Burge "a stupid, fat bitch." (Wells Depo. 22).

**{¶16}** Appellant then began pacing around the store. Wells described it as "faux shopping * * * like spiteful behavior because he knew [Burge] wasn't going to help him." (*Id.* 33). Wells conceded that Appellant did not threaten to hurt anyone or pull a gun. (*Id.* 25). Burge told Wells to call the police, but Wells continued to try to ameliorate the situation, suggesting to Burge that they should accept the CCW permit or simply ask Appellant to leave the store. (*Id.* 23-24).

**{¶17}** When Burge told Wells to call the police a second time, Appellant left the

store and did not return. (*Id.* 24). Hood, who was in the back room with Wehr, had already called 9-1-1 when Burge instructed Wells to call the police. (*Id.* 49, 51). Hood and Wehr described the events leading to Appellant's ouster from the store, and provided his physical description to the Sheriff's office. At oral argument, counsel for Appellant stated that a transcript of the 9-1-1 call was a part of the record. An audio recording of the call was filed as an exhibit in the federal case, but was not included in the record here. Likewise, there is no transcript of the call in the record.

{¶18} Not surprisingly, Appellant's version of the events of April 14, 2014 diverges significantly from the story told by the AT&T employees. Appellant agrees he was told by the manager of the store on the previous day the specific paperwork and identification needed to take advantage of the employee discount, however, he claims he was simply told to bring state-issued identification. (Thomason Depo. 115-119). Appellant further agrees that he was frustrated because Wells told him that Wells believed Appellant's CCW permit was valid identification and that Wells was willing to complete his transaction. (*Id.* 129).

{¶19} However, Appellant testified that he "never raised [his] voice." (*Id.* 110). Despite the fact that Appellant wrote a letter to Burge and the staff as a part of his plea agreement, in which he apologized for calling AT&T employees "inappropriate names," he could not recall what he said on April 14, 2014 at his deposition. He specifically denied using the expression "fucking idiots." (*Id.* 122-125.) When asked if he called Burge "a fat ugly bitch," he responded, "[t]hat could have been what I said." (*Id.* 126). Later in his deposition, he admitted to use of the invective. (*Id* 133-134.)

{¶20} According to the incident report of Sheriff Deputy Chad Kulpa, dated April 14, 2014, Appellant saw Sheriff's Office cruisers with sirens and light activated as he exited the mall and attempted to avoid them by ducking behind parked cars as he made his way to his truck. Deputy Kulpa, having been alerted to the possibility that Appellant was armed, walked toward the truck and ordered Appellant, who was in the truck, to show his hands and raise them. Instead, Appellant turned toward the passenger seat, which prompted Deputy Kulpa to draw his weapon. With guns drawn, Deputy Kulpa and Deputy Nicole Martin approached the truck and Deputy Kulpa instructed Appellant to show his hands and remain still.

{¶21} Because the driver's side door was locked, Deputy Kulpa ordered Appellant to unlock the door. Appellant unlocked the door, but, according to Deputy Kulpa, refused to exit the vehicle, so the deputies forcibly removed him. After being removed from the truck, Appellant struggled with the deputies and was taken to the ground and handcuffed. Appellant suffered a small cut over his eye. A firearm found in Appellant's glove box was seized. Appellant's version of the events leading to his arrest directly contradicts Kulpa's incident report.

{¶22} The following facts are undisputed. Appellant was charged with inducing panic, in violation of R.C. 2917.31, a misdemeanor of the first degree. On July 17, 2014, Appellant entered a written no contest plea to the amended charge of disorderly conduct, in violation of R.C. 2917.11(A)(2), a minor misdemeanor. As a condition of his plea, Appellant was required to write a letter of apology to the employees of AT&T. In the letter, he assured them that he was not armed when he visited the store, and further, that he was "sorry that [his] attempt to identify [himself] by using photo identification of [his] concelled [sic] license caused [them] alarm." He promised to never return to the store.

{¶23} In a checklist-style entry captioned "JOURNAL ENTRY GUILTY/BIND OVER/CONTINUANCE," filed on July 31, 2014, Appellant was convicted, fined $150.00, and assessed $105.00 in court costs. A handwritten notation beneath the phrase "IT IS FURTHER ORDERED," reads, "Plea withdrawn. Conviction vacated. Charge amended. Fine/costs paid. Case ended." Appellant's firearm was returned at the conclusion of the criminal proceedings.

{¶24} Although Wehr, Hood, and Burge provided voluntary written statements to the Sheriff's Office on April 14, 2014, they did not participate in any way in the prosecution of Appellant's criminal case. Wehr testified that she never expressed a desire to "press charges" against Appellant. (Wehr Depo. 54). Hood provided similar testimony. (Hood Depo. 11). Likewise, Burge testified that she never spoke to the prosecutor assigned to Appellant's case. (Burge Depo. 42-43.)

{¶25} This matter was originally filed in the Southern District of Ohio. Federal question jurisdiction was predicated upon excessive force claims filed pursuant to 42 U.S.C. 1983 against the Belmont County Sheriff's Office and the deputies who placed

Appellant under arrest ("Belmont County defendants"). The pendent state claims for malicious prosecution and abuse of process against AT&T and the Belmont County defendants were remanded after summary judgment was entered in favor of the Belmont County defendants on the excessive force claims on the basis of qualified immunity.

{¶26} On remand, Appellant voluntarily dismissed the state claims against the Belmont County defendants. After briefing on the remaining claims against AT&T was complete and oral argument was held, the trial court granted summary judgment in favor of AT&T on both the malicious prosecution and abuse of process claims.

{¶27} Appellant appeals the dismissal of his abuse of process claim. With respect to that claim, the trial court wrote:

> The Court further finds that the plaintiff has not and cannot meet the three elements of the tort of abuse of process. The Court concludes that the criminal prosecution was proper both in terms of its commencement and its basis on probable cause; that it was not in any way perverted by anyone to accomplish an ulterior purpose for which it was not intended or designed; and that plaintiff sustained no damage from the criminal proceedings—for which again he was found guilty as charged.

(3/9/18 J.E. 2.)

III.   Law

{¶28} In the watershed case of *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 1994-Ohio-503, 626 N.E.2d 115, the Ohio Supreme Court recognized for the first time the separate and distinct tort of abuse of process. *Id.* at 300. The *Yanklevich* Court observed that the tort of malicious prosecution, whether civil or criminal, provides a remedy when a proceeding is instituted without probable cause, but "does not provide a remedy for a related, yet different situation." *Id.* at 297. The Court further observed that "[t]he tort action termed 'abuse of process' has developed for 'cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Id.*

Case No. 18 BE 0016

{¶29} Accordingly, the elements of abuse of process are: (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Id.* at paragraph one of the syllabus. In contrast, the elements of malicious prosecution in a criminal setting are: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, 871 N.E.2d 1159, ¶ 10.

{¶30} In distinguishing the related but separate torts, the *Yanklevich* Court opined that "[t]he two torts are not interchangeable; * * * [t]he presence or absence of probable cause is the determining factor which divides the areas of operation of the two torts." *Id.* at n. 6. Based on this dichotomy, we have found that the assertion of one claim forecloses the other. In *Tablack v. Wellman*, 7th Dist. No. 04-MA-218, 2006-Ohio-4688, ¶ 141, we held that a plaintiff asserting a lack of probable cause "defeats their own claim of abuse of process since they assert that one of the necessary elements does not exist." *Id.* ¶ 142.

{¶31} In order to establish the second element of abuse of process, "a claimant must show that one used process with an 'ulterior motive,' as the gist of [the] offense is found in the manner in which process is used. * * * There must also be shown a further act in the use of process not proper in the regular conduct of the proceeding." *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11, 474 N.E.2d 357 (12th Dist.1984). "The gravamen of the misconduct for which the liability * * * is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement of the Law 2d, Torts, Section 682, Comment a. "Ulterior purpose" or "motive" has been interpreted as "an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat." *Wolfe v. Little*, 2nd Dist. No. 18718, 2001 WL 427408, *10.

{¶32} Despite the distinct elements of each tort, a review of Ohio case law

reveals that plaintiffs often conflate the second elements of the claims. For instance, in *Hershey v. Edelman*, 187 Ohio App.3d 400, 2010-Ohio-1992, 932 N.E.2d 386, (10th Dist.), the abuse of process claim was based on the filing of a police report. The Tenth District observed that "the thing complained of is not that issuance of the process was wrongfully procured, but that, having been issued, it was wilfully perverted, so as to accomplish a result not commanded by it or lawfully obtainable under it." *Id.* at ¶ 40, 932 N.E.2d 386, citing *Avco Delta Corp. v. Walker*, 22 Ohio App.2d 61, 66, 258 N.E.2d 254 (1969). The Tenth District opined, in order to maintain an action, it is necessary to allege "that the action or process itself (here, the filing of the police report) was proper or filed with sufficient probable cause, but that the proceeding itself was perverted or corrupted in order to accomplish an ulterior purpose." *Id.* at ¶ 44, 258 N.E.2d 254.

**{¶33}** Likewise, in *Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560, Coleman alleges that Gill, Coleman's former counselor, intentionally lied to the police about her, filed a false criminal complaint of telephone harassment, and threatened that Coleman's clinical records would be made public in the criminal prosecution. *Id.* ¶ 29. The Eighth District reasoned:

> A review of the pleadings finds that [Coleman's] abuse of process claim must fail as a matter of law. [Coleman's] entire action is premised upon there being a lack of probable cause for the criminal prosecution against her. All of her factual allegations claim that Gill intentionally lied in her complaint, that Beachwood knew she was lying and, therefore, no probable cause existed to prosecute her for telecommunications harassment under the claim that she called Gill when told not to. Accordingly, the trial court did not err in granting Gill judgment on this claim.

*Id.* ¶ 31.

IV.   Analysis

**{¶34}** Appellant advances two related assignments of error, which shall be addressed together for the purpose of judicial economy.

Case No. 18 BE 0016

THE TRIAL COURT REVERSIBLY ERRED COMMITTING PREJUDICIAL ERROR WHEN IT GRANTED THE DEFENDANT AT & T MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S ABUSE OF PROCESS CLAIM FINDING IN THE FACE OF CONTRADICTED EVIDENCE AND APPELLEE'S ADMISSIONS THE APPELLANT CANNOT "MEET" THE THREE ELEMENTS OF THE TORT OF ABUSE OF PROCESS

THE TRIAL COURT REVERSIBLY ERRED COMMITTING PLAIN ERROR WHEN IT GRANTED THE DEFENDANT AT & T MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S ABUSE OF PROCESS CLAIM FINDING IN THE FACE OF CONTRADICTED EVIDENCE AND APPELLEE'S ADMISSIONS THE APPELLANT CANNOT "MEET" THE THREE ELEMENTS OF THE TORT OF ABUSE OF PROCESS

{¶35} Appellant's brief reads, in pertinent part, "[AT&T] was sued because its authorized employees initiated a criminal prosecution by calling the Belmont County Sheriff and falsely accusing [Appellant] of threatening them with a gun and inducing panic which lead [sic] to [Appellant] being arrested, jailed, charged and prosecuted for a crime he did not commit. [AT&T] was also sued in the alternative because even if the criminal prosecution against [Appellant] was allegedly procedurally valid (it was not) it was an abuse of process." (Appellant's Brf. 15.)

{¶36} Throughout the course of this litigation, Appellant has repeatedly maintained that AT&T employees called 9-1-1 and falsely accused him of threatening them in retaliation for his insulting comments to Burge. In other words, Appellant has consistently asserted that probable cause did not exist for his arrest. A plaintiff's assertion that probable cause did not exist for his criminal prosecution is fatal to his abuse of process claim. *Tablack,* supra.

{¶37} Even assuming arguendo that Appellant has asserted that there was probable cause for his criminal prosecution, he has not offered any evidence that the proceeding was perverted by AT&T in an attempt to accomplish an ulterior purpose for which it was not designed. *Yaklevich*, supra. Throughout his brief, Appellant asserts

that Hood's 9-1-1 call and the voluntary statements provided by Wehr, Burge, and Hood constitute perversion of the criminal proceeding. However, Appellant misunderstands that the perversion element of the tort must occur after criminal proceedings have been instituted, and, further, he must show that AT&T perverted the proceeding in an attempt to accomplish an ulterior purpose for which it was not designed. See *Hershey* ¶ 44 ("Furthermore, defendant has not met his burden of setting forth specific facts to show that there is a genuine issue for trial regarding the allegation that plaintiff attempted to accomplish an ulterior purpose after filing the police report.")

{¶38} Appellant's argument on appeal is strikingly similar to the argument advanced in *Palivoda v. Felix*, 11th Dist. No. 2010-A-0017, 2011-Ohio-5231. In that case, the Eleventh District reversed the lower court's decision denying the Felixes' motion for judgment notwithstanding the verdict on Paviloda's abuse of process claim.

{¶39} The evidence adduced at trial established that Mitchel and Eric Felix blocked both ends of Paviloda's horseshoe driveway with their trucks and Eric began beating Paviloda's dog, which was chained in the yard, first with his hands and then with a baseball bat. Paviloda called 9-1-1, then, seeing his dog in jeopardy, grabbed a .22 caliber rifle. In the meantime, Mitchel caused considerable property damage with a second baseball bat. Paviloda exited his residence and fired one shot into the trees and two shots into the radiator of Eric's unoccupied truck. After the shots were fired, Mitchel's wife collected the baseball bats and fled the scene. *Id.* ¶ 5.

{¶40} When sheriff's deputies arrived, the Felixes and Paviloda's neighbor told the deputies that they were in Eric's truck when Paviloda fired the rifle. Paviloda was ultimately acquitted of three counts of felonious assault.

{¶41} In his abuse of process claim, Paviloda asserted that the Felixes " 'made statements to the police, causing [Paviloda] to be criminally charged,' " and "perverted [the criminal] proceedings to accomplish an ulterior purpose, i.e. 'to annoy, harass, and inflict emotional and financial distress upon Plaintiff.' " *Id.* ¶ 2. The Eleventh District found that the facts adduced at trial were legally insufficient to support the verdict. Even though Paviloda conceded that probable cause existed for his arrest, the Eleventh District predicated its decision on the fact that Paviloda's tort claim was rooted in the Felixes' false allegations prior to the commencement of the criminal action. Id. ¶ 29.

Case No. 18 BE 0016

**{¶42}** Simply stated, abuse of process will not lie for the wrongful initiation of an action but only for the improper use, or abuse of an action after a proper claim has been commenced. See *Gugliotta v. Morano*, 161 Ohio App.3d 152, 2005-Ohio-2570, 829 N.E.2d 757, ¶ 49 (9th Dist.), see also *Gillman v. Schlagetter*, 777 F.Supp.2d 1084 (S.D.Ohio 2010). Beyond the 9-1-1 call and the voluntary statements prepared by Hood, Wehr, and Burge, there is no evidence in the record to show that AT&T and its employees participated in the criminal prosecution. As a consequence, there is no evidence that they perverted the process for an ulterior purpose for which it was not designed.

**{¶43}** Further, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Wittenbrook v. Elecs. Recycling Services, Inc.*, 7th Dist. No. 16 BE 0023, 2018-Ohio-208, 104 N.E.3d 876, ¶ 46, appeal not allowed, 152 Ohio St.3d 1481, 2018-Ohio-1990, 98 N.E.3d 295, ¶ 46 (2018), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), at paragraph one of the syllabus. Insofar as we find find no error here, the plain error doctrine is wholly inapplicable.

V.    Conclusion

**{¶44}** In summary, Appellant has consistently maintained that probable cause did not exist for his arrest. He has predicated his abuse of process claim solely on the allegation that AT&T employees lied about his conduct in the store in retaliation for his insulting comments to Burge. His allegations, even taken as true for the purposes of summary judgment, fail to fulfill the second element of his abuse of process claim. In the absence of any evidence that that AT&T perverted the prior criminal proceeding in an attempt to accomplish an ulterior purpose for which it was not designed, we find that Appellant's assignments of error have no merit, and the judgment of the trial court is affirmed.

**Donofrio, J., concurs.**

**Waite, J., concurs.**

Case No. 18 BE 0016

[Cite as *Thomason v. AT&T*, 2018-Ohio-4914.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**