[Cite as *Turkoly v. Gentile*, 2021-Ohio-965.]

# IN THE COURT OF APPEALS OF OHIO
## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

KELLY TURKOLY, ET AL.,

    PLAINTIFFS-APPELLANTS,             CASE NO. 20 MA 0043

    v.

RICHARD D. GENTILE, M.D.,            O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Mahoning County Common Pleas Court
Trial Court No. 2016 CV 1835

Judgment Affirmed

Date of Decision:   March 25, 2021

APPEARANCES:

    *Geoffrey C. Brown and J. Zachary Zatezalo* for Appellants

    *Frank G. Mazgaj and Craig G. Pelini* for Appellee

Case No. 20 MA 0043

**ZIMMERMAN, J.**

{¶1} Plaintiffs-appellants, Kelly Turkoly ("Kelly") and Frank Turkoly ("Frank") (collectively, "the Turkolys"), appeal the March 3, 2020 judgment of the Mahoning County Court of Common Pleas granting a directed verdict in favor of defendant-appellee, Richard D. Gentile, M.D. ("Gentile"). For the reasons that follow, we affirm.

{¶2} This case stems from a medical-malpractice and medical-battery case between the parties in which a jury returned a verdict in favor of Kelly.[1] *See Gentile v. Turkoly*, 7th Dist. Mahoning No. 16 MA 0071, 2017-Ohio-1018, ¶ 2. Subsequent to that jury award, Gentile initiated a tortious-interference-with-business-relations and a tortious-interference-with-a-contract case (the "tortious-interference case") against Kelly. *Id.* at ¶ 11. Although the tortious-interference case proceeded to a jury trial, the trial court granted a directed verdict in favor of Kelly and dismissed Gentile's complaint. *Id.* at ¶ 12. Gentile appealed and the trial court's decision was affirmed on appeal. *Id.* at ¶ 41. *See also Gentile v. Turkoly*, 7th Dist. Mahoning No. 16 MA 0071, 2017-Ohio-2959, ¶ 13. This case represents a concatenation of the continued litigation between the parties.

---

[1] Much of the factual and procedural background of the cases is recited in previous appeals, and we will not duplicate those efforts here. *See Gentile v. Turkoly*, 7th Dist. Mahoning No. 16 MA 0071, 2017-Ohio-1018; *Gentile v. Turkoly*, 7th Dist. Mahoning No. 16 MA 0071, 2017-Ohio-2959.

{¶3} Specifically, in response to Gentile's tortious-interference case, the Turkolys filed a complaint on July 12, 2016, in which they alleged claims for malicious prosecution, abuse of process, defamation, and intentional infliction of emotional distress against Gentile.[2] (Doc. No. 1). After being granted leave by the trial court, Gentile filed his answer on September 22, 2016.[3] (Doc. Nos. 4, 5, 6).

{¶4} On January 31, 2019, Gentile filed a motion for summary judgment. (Doc. No. 65). On March 4, 2019, the Turkolys filed a memorandum in opposition to Gentile's motion for summary judgment. (Doc. No. 72). On March 14, 2019, Gentile filed his response to the Turkolys' memorandum in opposition to his motion for summary judgment. (Doc. No. 76). On April 9, 2019, the trial court granted summary judgment in favor of Gentile as to the Turkolys' claims for malicious prosecution and defamation and denied summary judgment in favor of Gentile as to the Turkolys' claims for abuse of process and intentional inflection of emotional distress. (Doc. No. 81). Specifically, as to the Turkolys' claim for abuse of process, the trial court concluded that "a genuine issue of material fact exists as to whether the tortious interference litigation had been set in motion in proper form and with

---

[2] On March 28, 2019, Grange Insurance Company ("Grange") filed a motion to intervene in the case. (Doc. Nos. 77, 78). On April 8, 2019, the Turkolys filed a memorandum in opposition to Grange's motion to intervene. (Doc. No. 80). Grange filed its response to the Turkolys' memorandum in opposition to its motion to intervene on April 11, 2019. (Doc. No. 82). The trial court granted Grange's motion to intervene on April 17, 2019 and filed instanter its third-party complaint against the Turkolys for declaratory judgment. (Doc. No. 103). On April 26, 2019, the Turkolys filed their answer to Grange's third-party complaint. (Doc. No. 120). Although Grange's third-party complaint remains unresolved by the trial court, its complaint was rendered moot by the trial court's decision granting a directed verdict in favor of Gentile.

[3] The case was stayed pending the resolution of the appeal in another case involving the parties. (*See* Doc. Nos. 35, 38).

probable cause and whether [Gentile] had an ulterior motive for filing the lawsuit." (*Id.*). As to the Turkolys' intentional-infliction-of-emotional-distress claim, the trial court concluded that the Turkolys "assert[ed] several factual allegations, coupled with the filing of the tortious interference lawsuit, that create triable issues of fact." (*Id.*). Importantly, the Turkolys did not appeal the trial court's summary-judgment decision. Gentile filed a motion for reconsideration of the trial court's decision on April 11, 2019, which the trial court denied. (Doc. Nos. 83, 102).

**{¶5}** The case proceeded to a jury trial before the trial court's magistrate on September 9, 2019. At the close of the Turkolys' case in chief, Gentile moved for a directed verdict as to all of the Turkolys' remaining claims, which the trial court's magistrate granted on September 12, 2019 and dismissed the remaining claims. (Doc. No. 139). Specifically, the trial court's magistrate concluded that the Turkolys "offered insufficient evidence to establish that [Gentile's] prior tortious interference lawsuit had been set in motion in proper form and with probable cause to create a question of fact for the jury" and "had been perverted to attempt to accomplish an ulterior purpose for which it was not designed to create a question of fact for the jury" as to the Turkolys' abuse-of-process claim. (*Id.*). As to the Turkolys' intentional-infliction-of-emotional-distress claim, the trial court's magistrate concluded that the Turkolys "offered insufficient evidence to establish that [Gentile's] conduct was so extreme and outrageous as to go 'beyond all possible

Case No. 20 MA 0043

bounds of decency' and was such that it could be considered as 'utterly intolerable in a civilized community' to create a question of fact for the jury." (*Id.*).

{¶6} On September 26, 2019, the Turkolys filed their objections to the trial court's magistrate's decision. (Doc. No. 141). (*See also* Doc. No. 146). Gentile filed a memorandum in opposition to the Turkolys' objections to the trial court's magistrate's decision on December 19, 2019.[4] (Doc. No. 149). After a hearing on January 22, 2020, the trial court overruled the Turoklys' objections to the magistrate's decision and adopted the magistrate's decision as the trial court's final judgment entry on March 3, 2020. (Doc. No. 150).

{¶7} On March 20, 2020, the Turkolys filed a notice of appeal. (Doc. No. 151). They raise three assignments of error for our review, which we discuss together.

**Assignment of Error No. I**

**The trial court committed reversible error in dismissing, with prejudice, the Appellant's claims in their entirety.**

**Assignment of Error No. II**

**The trial court's insufficiency findings on the Appellant's abuse of process claim were clearly and manifestly against the weight of the evidence.**

---

[4] Grange filed a memorandum in opposition to the Turkolys' objections to the trial court's magistrate's decision on December 17, 2019. (Doc. No. 148).

**Assignment of Error No. III**

**The trial court's insufficiency findings on the Appellants' IIED claim were clearly and manifestly against the weight of the evidence.**

{¶8} In their assignments of error, the Turkolys argue that the trial court erred by granting a directed verdict as to their abuse-of-process and intentional-infliction-of-emotional-distress claims in favor of Gentile. Specifically, in their first assignment of error, the Turkolys argue that this court should disregard stare decisis and eliminate the element of probable from the abuse-of-process test. In their second and third assignments of error, the Turkolys argue that the trial court erred by concluding that they failed to present sufficient material evidence to create a question of fact for the jury as to their abuse-of-process and intentional-infliction-of-emotional-distress claims.

*Standard of Review*

{¶9} A trial court's decision granting a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Carter v. R & B Pizza Co., Inc.*, 7th Dist. Jefferson No. 09JE34, 2010-Ohio-5937, ¶ 15. De novo review is independent, without deference to the lower court's decision. *Netherlands Ins. Co. v. BSHM Architects, Inc.*, 7th Dist. Monroe No. 18 MO 0001, 2018-Ohio-3736, ¶ 19.

*Analysis*

{¶10} The rule governing directed verdicts, Civ.R. 50, provides, in relevant part:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Civ.R. 50(A)(4).

{¶11} "'The "reasonable minds" test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party.'" *Netherlands Ins.* at ¶ 19, quoting *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, ¶ 22, quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 4. "'"A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence."'" *Id.*, quoting *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 14, quoting *O'Day v. Webb*, 29 Ohio St.2d 215, (1972), paragraph three of the syllabus.

{¶12} "A motion for directed verdict tests the sufficiency of the evidence at trial, not the weight of such evidence or the credibility of witnesses." *Wittenbrook*

*v. Elecs. Recycling Services, Inc.*, 7th Dist. Belmont No. 16 BE 0023, 2018-Ohio-208, ¶ 26, citing *Sayavich v. Creatore*, 7th Dist. Mahoning No. 07 MA 217, 2009-Ohio-5270, ¶ 44. "'[T]he court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?'" *Id.*, quoting *One Step Further Physical Therapy, Inc. v. CTW Dev. Corp.*, 7th Dist. Mahoning No. 11 MA 66, 2012-Ohio-6137, ¶ 35. "'When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate.'" *Smith v. Wiley*, 7th Dist. Belmont No. 16 BE 0061, 2018-Ohio-5387, ¶ 15, quoting *Scanlon v. Pfaller*, 12th Dist. Butler No. CA2005-05-110, 2006-Ohio-2022, ¶ 19.

{¶13} In this appeal, the Turkolys argue that the trial court erred by granting a directed verdict in favor of Gentile as to their abuse-of-process and intentional-infliction-of-emotional-distress claims. We will begin by addressing the Turkolys' abuse-of-process claim.

*Abuse of Process*

{¶14} "[T]he elements of abuse of process are: (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Thomason v. AT & T*, 7th Dist. Belmont No. 18 BE 0016, 2018-Ohio-4914, ¶ 29,

citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994), paragraph one of the syllabus. Simply stated, the tort of abuse of process provides a remedy for situations in which (successful or unsuccessful) legal procedure is instituted *with* probable cause but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. *See id.* at ¶ 28. *See also Tablack v. Wellman*, 7th Dist. Mahoning No. 04-MA-218, 2006-Ohio-4688, ¶ 141 ("One of the elements a plaintiff must prove for an abuse of process claim is that a legal proceeding has been set in motion in proper form and *with* probable cause.").

{¶15} In contrast, the elements of the tort of malicious civil prosecution are: (1) malicious institution of prior proceedings against the plaintiff by defendant; (2) *lack* of probable cause for filing the prior proceedings; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Yaklevich* at 297. This sister tort to abuse of process applies to situations in which a proceeding is instituted *without* probable cause. *See Thomason* at ¶ 28 (noting that "the tort of malicious prosecution, whether civil or criminal, provides a remedy when a proceeding is instituted *without* probable cause, but 'does not provide a remedy for a related, yet different situation'"), quoting *Yaklevich* at 297. *See also Tablack* at ¶ 141 ("One of the elements a plaintiff must prove in a malicious prosecution case is a *lack* of probable cause for the filing of the lawsuit.").

{¶16} "In distinguishing the related but separate torts, the [the Supreme Court of Ohio discussed] that '[t]he two torts are *not* interchangeable; * * * [t]he presence or absence of probable cause is the determining factor which divides the areas of operation of the two torts.'" (Emphasis added.) *Thomason* at ¶ 30, quoting *Yaklevich* at 301, fn. 6. "Based on this dichotomy, * * * the assertion of one claim *forecloses* the other." (Emphasis added.) *Id.* *See also Tablack* at ¶ 141-142 (asserting that the abuse-of-process claim was "incompatible with the malicious prosecution claim" and concluding that a plaintiff alleging a lack of probable cause "defeats their own claim of abuse of process since they assert that one of the necessary elements does not exist").

{¶17} "'Probable cause' means a reasonable belief, supported by trustworthy information and circumstances, that the defendant's prior [proceeding] was legally just and proper." *Ohio Jury Instructions*, CV Section 435.01 (Rev. Feb. 16, 2013), citing *Huber v. O'Neill*, 66 Ohio St.2d 28, 29-30 (1981), *Baryak v. Kirkland*, 137 Ohio App.3d 704, 710-711 (11th Dist.2000), and *Evans v. Smith*, 97 Ohio App.3d 59, 68 (1st Dist. 1994). *See also Garcia v. Bailey*, 2d Dist. Montgomery No. 16646, 1998 WL 310742, *4 (May 22, 1998).

{¶18} Moreover, "[i]n order to establish the second element of abuse of process, 'a claimant must show that one used process with an "ulterior motive," as the gist of [the] offense is found in the manner in which process is used.'"

*Thomason* at ¶ 31, quoting *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11 (12th Dist.1984). "'"[T]he ulterior motive contemplated by an abuse-of-process claim generally involves an attempt to gain an advantage outside the proceeding, using the process itself as the threat."'" *Carson v. Carrick*, 8th Dist. Cuyahoga No. 108129, 2019-Ohio-4260, ¶ 15, quoting *Barbara Mills v. Westlake*, 8th Dist. Cuyahoga No. 103643, 2016-Ohio-5836, ¶ 38, quoting *Sivinski v. Kelley*, 8th Dist. Cuyahoga No. 94296, 2011-Ohio-2145, ¶ 36. *See also Ohio Jury Instructions*, CV 435.01 (Rev. Feb. 16, 2013) (defining the term "ulterior purpose" as meaning that the proceeding "was instituted as form of coercion" or that the proceeding "was used as threat").

{¶19} "The key factor in an abuse-of-process lawsuit 'is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Carson* at ¶ 16, quoting *Yaklevich*, 68 Ohio St.3d at 300. "'"[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."'" *Hershey v. Edelman*, 187 Ohio App.3d 400, 2010-Ohio-1992, ¶ 41 (10th Dist.), quoting *Yaklevich* at 298, quoting Prosser & Keeton, *The Law of Torts* 898 (5th Ed.1984).

{¶20} In their first assignment of error, the Turkolys suggest that this court ignore stare decisis and apply a different abuse-of-process test which would be more

favorable to their situation. Specifically, the Turkolys contend that this court should adopt an abuse-of-process test that omits the probable-cause element. However, this court may not stray from the construct of the rules explicitly carved out by the court of higher jurisdiction—or the precedent applicable to this court—without special justification. *See Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 10th Dist. Franklin No. 19AP-775, 2020-Ohio-2694, ¶ 13. Here, the Turkolys have not provided any such special justification. Indeed, a remedy was available to the Turkolys by virtue of the tort of malicious prosecution. *See, e.g., Ohio Jury Instructions*, CV Section 435.01 (Rev. Feb. 16, 2013) ("If the defendant did not have probable cause to institute the prior proceeding, then the appropriate claim for relief may be malicious prosecution."). Since the Turkolys did not fully explore that avenue of relief does not entitle them to a new and different application of the tort of abuse of process. Nevertheless, the tort of malicious prosecution is *not* before us and we will *not* discuss any argument related to it. *See Liberty Mut. Ins.* at ¶ 14.

{¶21} For these reasons, the Turkolys' first assignment of error is overruled.

{¶22} Notwithstanding their argument in their first assignment of error, the Turkolys contend in their second assignment of error that they presented sufficient evidence that Gentile's tortious-interference case was initiated *with* probable cause because Gentile "stuck to the contents of his Verified Complaint and steadfastly maintained he was legally justified in filing his lawsuit." (Appellant's Brief at 24).

In support of this argument, the Turkolys direct us to Gentile's trial testimony in which he attested to the veracity of his tortious-interference case. (Sept. 9, 2019 Tr. at 369). They further direct us to Gentile's testimony in which he attested to the veracity of the allegation in his complaint regarding a "vitals.com" review posted by Kelly as the reason for the cancellation of an appointment by another patient. (*Id.* at 405-406). Likewise, the Turkolys direct us to Gentile's testimony in which he maintained that Kelly "was responsible for a ten percent reduction in [his] business" to support their argument that they presented sufficient evidence that Gentile's tortious-interference case was initiated *with* probable cause. (*Id.* at 424).

{¶23} In our review, we conclude that the Turkolys' argument is without merit. "While the existence of probable cause is usually a question for the jury, the trial court can decide the issue where the evidence is such that reasonable minds could come to but one conclusion." *Baryak*, 137 Ohio App.3d at 711, citing *Portis v. TransOhio Sav. Bank*, 46 Ohio App.3d 69, 70 (9th Dist.1988). *See also All Town & Country Septic Tank Serv., Inc.*, 9th Dist. Summit No. C.A. 12906, 1987 WL 12875, *2 (June 10, 1987). The trial court may do so when the plaintiff fails to meet his or her burden of establishing that a defendant instituted a legal proceeding with probable cause. *See Portis* at 70.

{¶24} The Turkolys' argument is disingenuous and inconsistent with their theory of the case—that is, the theory of the Turkolys' case is "Gentile's prosecution

of [a] fictitious lawsuit." (*See, e.g.*, Appellant's Brief at 14). Indeed, in their complaint, the Turkolys did not allege the probable-cause element of an abuse-of-process claim. (Doc. No. 1). Instead, the essence of the Turkolys' abuse-of-process claim (as pleaded in their complaint) is that Gentile's tortious-interference case "constituted a perversion of the legal process * * * to accomplish an ulterior purpose for which the process was not designed"—namely, "to improperly coerce the [Turkolys] into paying [Gentile] money in retaliation and/or in revenge against the [Turkolys] for obtaining a verdict against [Gentile] for medical battery and medical negligence * * * ." (*Id.*). *Compare Kremer v. Cox*, 114 Ohio App.3d 41, 53 (9th Dist.1996) (noting that "[t]he essence of Kremer's claim is that the suit against him was brought without probable cause, for an "ulterior" malicious purpose; he does not contend, and presented no evidence to show, that the suit was initially brought with probable cause and later 'perverted' by Cox to aggravate Kremer").

{¶25} Likewise, in response to Gentile's motion for summary judgment, the Turkolys disputed Gentile's assertion that his tortious-interference case "was properly instituted for [an] appropriate purpose." (Doc. No. 72). Specifically, the Turkolys alleged that "the evidence tells a much different story." (*Id.*). The Turkolys maintained this theme throughout the case.

{¶26} It was not until trial (after their malicious-prosecution claim was dismissed in response to Gentile's motion for summary judgment) when the

Turkolys attempted to change the narrative. Notwithstanding the narrative conversion, the Turkolys continued to champion their "fictitious-lawsuit" narrative. Stated differently, the Turkolys presented *conflicting* evidence at trial concerning the veracity of Gentile's tortious-interference case. Specifically, in support of their intentional-infliction-of-emotional-distress claim, the Turkolys presented evidence supporting the allegation that "Gentile intentionally and deliberately made a false claim to file a lawsuit." (Sept. 9, 2019 Tr. at 323). In other words, the Turkolys presented evidence at trial (in support of their intentional-infliction-of-emotional-distress claim) that Gentile's claim was filed *without* probable cause.

{¶27} On appeal, the Turkolys devote *several* pages of their brief rehashing their "fictitious-lawsuit" narrative. For instance, the Turkolys summarized:

> At the trial of the instant matter below, the Court admitted evidence of Dr. Gentile's malicious and abusive institution and perpetuation of a fictitious claim against Kelly Turkoly, and his ulterior purpose in seeking relief beyond the power of the courts. This evidence included 1) Dr. Gentile's Verified Complaint with its falsely sworn statements and request to have Kelly gagged in violation of her First Amendment rights; 2) the contemporaneous email correspondence from [the other patient], along with 3) [The other patient's] testimony from Dr. Gentile's lawsuit refuting Dr. Gentile's sworn statements about the reason for [her] cancellation; 4) Dr. Gentile's email correspondence to third parties showing his preoccupation with his trial loss and admitted motives to judicially establishing Kelly Turkoly as a liar in the context of her malpractice victory; 5) the testimony of Christopher Regan, Esq. detailing Dr. Gentile's litigation conduct and sequencing the entirety of the post-verdict relief he sought; and 6) the testimony from Patricia Baily, Ph.D. describing the manner in which the nature and inherent power dynamics of the prior physician/patient relationship and Dr. Gentile's prosecution of the fictitious lawsuit

itself contributed to the outrageous nature of Dr. Gentile's conduct and harmed and damaged the [Turkolys].

(Appellant's Brief at 14). The abovementioned information is evidence introduced by the Turkolys at trial. Furthermore, their "fictitious-lawsuit" theory is bolstered by their first assignment of error in which they contend that they "satisfied all of the liability elements of a malicious prosecution claim" and that "[t]he evidence here fully embodies a malicious institution of proceedings." (Appellant's Brief at 19). In other words, they argue that they established that Gentile instituted legal proceedings *without* probable cause.

{¶28} Nevertheless, the Turkolys contend (in their second assignment of error) that this court should disregard this evidence and conclude (based on three lines of testimony) that the trial court erred by granting a directed verdict in favor of Gentile because they presented sufficient material evidence that Gentile initiated his tortious-interference case *with* probable cause. We disagree. *Compare Tablack*, 2006-Ohio-4688, at ¶ 142 (concluding that the abuse-of-process claim was defeated by the declaration that the legal proceedings "'were utterly without any factual or legal basis'").

{¶29} Based on our de novo review of the record, we conclude that the trial court properly construed the evidence most strongly in favor of the party against whom the motion was directed—the Turkolys—and properly concluded that reasonable minds could come to but one conclusion based on the *totality* of the

evidence submitted (by the Turkolys) and that conclusion was adverse to the Turkolys. In sum, reasonable minds could not differ as to the lack of evidence of substantive and probative value regarding the probable-cause element of the Turkolys' abuse-of-process claim. Consequently, based on our de novo review of the entire record, we cannot conclude that the Turkolys presented sufficient material evidence that Gentile's tortious-interference case was initiated with probable cause.

{¶30} Because the Turkolys did not present sufficient material evidence that Gentile's tortious-interference case was initiated with probable cause, we need not address whether the Turkolys presented sufficient material evidence of the other elements of an abuse-of-process claim. For these reasons, we conclude that the trial court did not err by granting a directed verdict in favor of Gentile as to the Turkolys' abuse-of-process claim. Accordingly, the Turkolys' second assignment of error is overruled.

*Intentional Infliction of Emotional Distress*

{¶31} Turning to the Turkolys' intentional-infliction-of-emotional-distress claim, we likewise conclude that the trial court did not err by granting a directed verdict in favor of Gentile. "In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove '(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of

plaintiff's serious emotional distress.'" *Meminger v. Ohio State Univ.*, 10th Dist. No. 17AP-489, 2017-Ohio-9290, ¶ 14, quoting *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994). *See also Scarabino v. E. Liverpool City Hosp.*, 155 Ohio App.3d 576, 2003-Ohio-7108, ¶ 10 (7th Dist.).

**{¶32}** In this assignment of error, the Turkolys argue that the trial court erred by granting a directed verdict in favor of Gentile as to their intentional-infliction-of-emotional-distress claim because they presented sufficient material evidence that "Gentile's actions, in filing and prosecuting a knowingly fictitious tort for over two (2) years in three (3), separate Ohio tribunals to bully a legitimate critic into silence, crossed well over the line into being truly outrageous, intolerable, and beyond the bounds of decency." (Appellant's Brief at 30). In other words, the Turkolys contend that, because Gentile filed a "fake lawsuit," "[a] reasonable juror could easily conclude that Dr. Gentile's conduct was extreme and outrageous." (*Id.*). Because it is the only element that the Turkolys argue on appeal (and because it is dispositive), we need address only whether Gentile's conduct was extreme and outrageous.

**{¶33}** "The issue of whether conduct 'rises to the level of "extreme and outrageous" conduct constitutes a question of law.'" *Meminger* at ¶ 14, quoting *Jones v. Wheelersburg Local School Dist.*, 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, ¶ 41. *See Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio

App.3d 40, 2009-Ohio-2665, ¶ 48 (10th Dist.). Again, questions of law are reviewed de novo, which is independent and without deference to the lower court's decision. *See, e.g.*, *Carter*, 2010-Ohio-5937, at ¶ 15; *Netherlands Ins. Co.*, 2018-Ohio-3736, at ¶ 19.

**{¶34}** "'"Parties generally cannot be held liable under a theory of intentional infliction of emotional distress for having performed an action they were legally entitled to perform."'" *Sears Roebuck & Co. v. Swaykus*, 7th Dist. Jefferson No. 02 JE 8, 2002-Ohio-7183, ¶ 12, quoting *Southern Ohio Med. Ctr. v. Harris*, 4th Dist. Scioto No. 98 CA 2604, 1999 WL 729256, *4 (Sept. 3, 1999), citing *Scott v. Spearman*, 115 Ohio App.3d 52, 58 (5th Dist.1996). *See also Rhoades v. Chase Bank*, 10th Dist. Franklin No. 10AP-469, 2010-Ohio-6537, ¶ 16; *Morrow* at ¶ 49. "'The mere filing of a complaint, without more, is insufficient to demonstrate the sort of extreme and outrageous conduct addressed by the tort of intentional infliction of emotional distress.'" *Sears Roebuck* at ¶ 12, quoting *Scott* at *4. In sum, "'a legally sanctioned event'" will not "'give rise to the tort of intentional infliction of emotional distress;'" otherwise, "'April 15 in every year would give rise to a whole string of lawsuits for intentional infliction of emotional distress.'" *Id.* at ¶ 13, quoting *Scott* at 58-59.

**{¶35}** Here, Gentile's assertion of his legal rights "does not constitute conduct 'so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Rhoades* ¶ 18, quoting *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 375 (1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007).   Indeed, the Supreme Court of Ohio specifically stated:

> It has not been *enough* that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found *only* where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Emphasis added.)   *Yeager* at 374-375.  *See also Meminger* at ¶ 15, quoting *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, ¶ 47 (8th Dist.) and *Perkins v. Lavin*, 98 Ohio App.3d 378, 383 (9th Dist.1994); *Scarabino v. E. Liverpool City Hosp.*, 155 Ohio App.3d 576, 2003-Ohio-7108, ¶ 11 (7th Dist.) (noting that "'[o]nly the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct'"), quoting *Brown v. Denny*, 72 Ohio App.3d 417, 423 (2d Dist.1991); *Clay v. Shriver Allison Courtley Co.*, 7th Dist. Mahoning No. 17 MA 0003, 2018-Ohio-3371, ¶ 52.

{¶36} Accordingly, even if we assume without deciding that Gentile's tortious-interference case constituted a "fake lawsuit," the Turkolys did not present sufficient material evidence that Gentile's conduct rose to the extreme-and-outrageous standard. *Compare Rhoades* at ¶ 18-19 (concluding that Chase Bank's "legally permissible actions" in "utilizing the tools of a civilized community, i.e. the legal process, to resolve its conflict with [Rhoades]" cannot "as a matter of law, give rise to a claim for intentional infliction of emotional distress"); *Morrow* at ¶ 49 (concluding that "even assuming * * * that appellees had no good-faith basis for denying and attempting to avoid liability for the default judgment, appellees' conduct does not rise to the level of extreme and outrageous conduct [because] defendant's conduct is not extreme and outrageous simply because it is criminal and/or characterized by malice"). *See also Scarabino* at ¶ 12 (noting that "the Ohio Supreme Court set a very high bar for recovery for this type of claim").

{¶37} Because we conclude that the Turkolys failed to present sufficient material evidence that Gentile's conduct was extreme and outrageous, they cannot sustain their claim for intentional infliction for emotional distress. Consequently, the trial court did not err by granting a directed verdict in favor of Gentile as to the Turkolys' intentional-infliction-of-emotional-distress claim.

{¶38} For these reasons, the Turkolys' third assignment of error is overruled.

{¶39} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**

**Judges William R. Zimmerman, John R. Willamowski and Stephen R. Shaw from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.**